# UNITED STATES DISTRICT COURT

For the

# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **Robert J. Pedreira Sr.** | ) | **SWORN COMPLAINT** |
| *Plaintiff* | ) | CASE NUMBER: |
| | ) | Jury Trial Requested |
| | ) | |
| **United States of America, Federal** | ) | |
| **Bureau of Prisons,** | ) | |
| **United States of America, Public** | ) | |
| **Health Services,** | ) | |
| *Defendants* | ) | |

**F I L E D**
Clerk's Office
USDC, Mass.
Date  MAY 07 2019
By_____
Deputy Clerk

## DEFENDANTS AND REASON FOR CAUSE OF ACTION

**Federal Bureau of Prisons:** has policies regarding non-formulary medication and the indigent policy that the Defendants followed causing a violation of the Plaintiff's Constitutional Right resulting in Cruel and Unusual Punishment.

**Public Health Services:** has policies and lack of training that caused the Defendants to commit acts the caused the Plaintiff to suffer Cruel and Unusual Punishment.

This Court has jurisdiction under 28 U.S.C. subsection 1331 as this case involves Federal Questions The Plaintiff alleges the Defendant violated his 8th and 14th Amendment constitutional rights due to regulations and policy and that through their actions and inactions subjected him to Cruel and Unusual punishment.

This complaint is relative to a Bivens complaint, 1:18-cv-12535-IT

**BACKGROUND**

The Plaintiff is a sixty (60) year old male, currently residing at 444 Harrison Ave. Boston Ma. 02118.

The Plaintiff has been under a doctor's care for severe depression, and panic and anxiety disorder.

The Plaintiff during the past twenty (20) years, since 1998, has been under a doctor's care for severe depression, and Panic and Anxiety Disorder. Plaintiff is currently receiving SSI for this disability.

The Plaintiff during the past twenty years, has been prescribed several different medications to lessen his symptoms. The Plaintiff contends that the best medication that worked for him was Xanax and Kolonopin.

The Plaintiff was first in the custody of the Federal Bureau of Prisons from 2006-2009. He was convicted of Tax Fraud, and originally sentenced to forty-eight months.

During that incarceration he was treated for his disability.

Upon the Plaintiff's release in 2009, the Plaintiff participated in Outpatient counseling/psychotherapy and Inpatient treatment.

After the Plaintiff's release in February 2009, he was under a psychiatrist care at Midcoast Mental Health in Rockland Maine. The psychiatrist proscribed the Plaintiff kolopin, 2mg three times a day.

The Plaintiff states he was told by his Probation Officer, Brian Turgen, that he had petitioned the Court to have mental health counseling be part of the terms of the Plaintiff's supervised release.

The Plaintiff states that he advised his probation officer of police contact when he had a panic attack in considering suicide and was involved in a head on collision.

The Plaintiff states Mr. Turgen asked the Plaintiff if he considered suicide at other times and when the Plaintiff replied in the affirmative instructed the Plaintiff to admit himself to the PARC unit at Penobscot Bay Hospital.

Due to his living conditions, the Plaintiff felt he was unable to cope with the stress of being released from prison, and not getting along with his wife, left the country and went to live in S. America. He remained under a doctor's care there.

The Plaintiff returned to the States on December 6, 2017 and was taken into custody in Dallas, Texas when the plane he was on landed.

The Plaintiff was remanded to Kaufman County Jail where he stayed until his transfer to Straford County Jail in New Hampshire.

> During the transfer the Plaintiff was held at Fanning County Jail. There he was given his BOP file. As the Plaintiff glanced through it, he saw that during his prior incarceration in the FBOP he was prescribed Wellbutrin and Kolonopin.

While in custody in both county jails, and in the Oklahoma facility he advised staff of his disability. The Plaintiff received the medication for his depression that he had at the time of his arrest, but received nothing for his anxiety and panic attacks. The doctor at Straton County, the Plaintiff believes gave him Gabapentin, with which he arrived at FMC Devens.

In March of 2017, the Plaintiff was sentenced to twenty-four (24) months at Federal Medical Center, Devens in Ayer Ma.

## STATEMENT OF CLAIM

1. During intake on March 31,2016 the Plaintiff was interviewed by a M. Chinchilla.

2. In the report M. Chinchilla reported "A history of mental issues was noted: Depressive Disorder, Anxiety Disorder" The report continues" A history of prior mental health treatment was noted: Outpatient Counseling /Psychotherapy, inpatient treatment."

3. During the Plaintiff's incarceration at FMC Devens, his primary mental health providers were, Dr. Patel, and Anna Santoro, supervised by Dr. Kennedy.

4. From March 31, to May 2018, the Plaintiff claims his mental health declined to due to the delay and inactions of the Defendants that can be construed as a refusal of treatment by the defendants.

5. On April 27, 2018 H. Lassett filed a report. In it the "Risk and Protection Factors" for suicide was assessed. M. Lassett stated the plaintiff had "static" and "Dynamic risk factors present, and that the overall "Chronic Suicidal Risk" was present.

6. On April 7,2017 the Plaintiff was seen by Dr. Hardy. Dr. Hardy states "His past medical history includes "Hyperlipidemia, Depressive Disorder, Anxiety Disorder. On page four (4) under "Disposition" he writes "MH: Anxiety, psychiatry consult, urgent.

7. On April 21,2007 Defendant Patel saw the Plaintiff. According to the Defendants report, under complaint two (2), the Plaintiff told the Defendant, He reports he has anxiety all the time. He reports that anxiety gives him chest pains and difficulty breathing... He said that he stays in his room as being out gives him anxiety."

8. Defendant Patel discussed proscribing Buspar for the Plaintiff's anxiety, the Plaintiff told Defendant Patel that he had been on it previously, but it did not help, it was ineffective. Defendant Patel prescribed it anyway, ten (10) mg three (3) times a day.

9. Defendant Patel saw the Plaintiff on May 18,2017. Plaintiff advised Defendant the medications were not helping. Plaintiff advised Defendant the effective medication was kolonopin, Xanax, and valium. Defendant acknowledged under Assessment "anxiety disorder" giving proof of awareness of a disorder that can cause harm, as well as pain and suffering. The Defendant increased the Buspar to fifteen (15) mg three (3) times a day.

10. On June 22, 2017 when neither Defendants responded to his cop-outs, the Plaintiff started the Administrative Remedy process. The first step is a "BP-8", an informal resolution. In the BP-8, the Plaintiff states he has chest pains, in addition he stated he suffers from nightmares where he screams, kicks, and punches in his sleep. He stated his anxiety is confining him to his bed and causing him physical problems (hemorrhoids and bloody stool). He requested medication to alleviate his panic attacks and anxiety.

11. On July 14, 2017 Plaintiff was seen by Defendant Santoro. Plaintiff described how his depression made him feel and he suffers from anxiety "all the time". He reported his anxiety increased around others. Defendant Santoro gave the Plaintiff two (2) oral tests. The first a "PHQ-9" he scored a fifteen (15), according to Defendant "indicates moderate depression. The second test, a HAM-A the Plaintiff scored a twenty-one (21) indicating "Moderate Depression" (It should be noted that it may be seen that the HAM-A test is for anxiety, not depression. The Plaintiff was prescribed Prazosin for nightmares. Dr Patel, and Kennedy co-signed the report.

12. As the time to file the next stage in the Administrative Remedy process had expired, one must file the BP-9 within twenty (20) days. The Plaintiff filed a BP-8 on or about July 30, 2017. The Plaintiff was ill, vomiting and thought it was the Prazosin, which is a medication for blood pressure, and felt that pill plus the other high blood pressure pill he took caused the vomiting. He stopped taking the medication, and advised Santoro via two (2) cop-outs.

13. The reply to the Plaintiff's BP-8 stated the Plaintiff had a scheduled call-out (appointment) but did not show up for the appointment. There was a call out, but not that day, and the Plaintiff went, but Defendant Santoro did not show.

14. On August 17,2017 the Plaintiff saw Defendant Santoro, he stated he felt "hopeless, sad, like being in a dark room with no windows." He said "others have noticed he had been crying frequently and that he was more irritable.

15. Defendant Santoro gave the Plaintiff the oral tests. The first PHQ-9, he scored a twenty (20) indicating moderate/severe depression. The second he scored a twenty-nine (29) on the HAM-A, indicating moderate/severe anxiety. This was on August 17, 2017 and the Defendant advised trying ten (10) mg Paroxetine. Again, Defendants Patel and Kennedy co-sign report.

16. On August 24,2017 the Plaintiff filed a BP-9 (appeal of the BP-8). The Plaintiff stated upon his arrest in December 2017, the medication for his anxiety was stopped. The Plaintiff stated Buspar did not help him. He asked for something to relieve his "24/7" suffering. Because the Plaintiff needed to rely on prison authorities to treat his medical needs, the Defendants failure was causing the Plaintiff unnecessary suffering. Denial of medication caused needless pain to the Plaintiff, not serving any penological objective.

17. Defendant Russel replied on September 11, 2017, that the Plaintiff had a "history significant for depression and anxiety disorder" (acknowledging the Plaintiffs condition) It stated the Plaintiff was noncompliant in taking the Paroxetine, missing "6 out of 10" doses. The Plaintiff disputed this originally with Defendant Santoro stating he missed the last three (3) doses because he was unable to go on the compound due to his anxiety. The Plaintiff missed meals due to his anxiety so he did not go to the pill line. As the reply stated his non-compliance was reason for his pain, the Plaintiff decided to be more in compliance and file again. The Defendant stated "you are receiving and will continue to receive appropriate medical care consistent with Bureau of Prisons medical standards." Following BOP policy contributed to the Plaintiff's suffering.

18. On September 7,2017 the Plaintiff saw Defendant Santoro for his "known history of depression and anxiety". Plaintiff stated "he has done well with kolopin in the past and he thinks he needs this medication." The Defendant chose a less efficacious treatment plan. She did not try any other anti-anxiety medication at all in the whole time she treated the Plaintiff. Report co-signed by Patel and Kennedy.

19. The Plaintiff asked Defendant Santoro what the max dose for the Paxil was. She said sixty (60) mg. The Plaintiff subsequently found out that Paxil is more effective at higher doses, but the defendants made no effort to try higher doses of the Paxil to help the Plaintiff get relief from his suffering.

20. On November 5, 2017, the Plaintiff filed a BP-8 stating he is in his bunk almost all the time, when not at work. He stated he "cannot watch TV, and it is difficult to go on the compound." He also stated in his cop-out to Defendant Santoro he was having difficulty coping.

21. The Plaintiff's medical condition affected his daily activities and he was in cronic and substantial pain. The Defendants had professional training (Dr. Kennedy is the head Psychiatrist and co-signed the reports regarding the Plaintiff) The Plaintiff told the Defendants on many occasions of his suffering, yet the Defendants continued in their obduracy.

22. On November 6,2017, Plaintiff received a reply to his BP-8. It stated "You are scheduled for a follow-up in the **near future**." That appointment did not occur until January 18,2018, a significant delay in providing for the Plaintiff underlying medical condition, causing the Plaintiff needless suffering.

23. The Plaintiff was again told "you are receiving and will continue to receive appropriate medical care consistent with the Bureau of Prison's medical standards." If the Defendants were unable to provide the necessary medication to relieve the Plaintiff's suffering due to a BOP policy, it may evidence that the regulation is not reasonable, which resulted in violating the Plaintiff's constitutional rights.

24. On November 12,2017 the Plaintiff filed a BP-9 stating "I am almost unable to leave the building due to anxiety and panic attacks. I leave only for work (because I have no choice) and to eat... I am having difficulty coping... I cannot go to the TV room or engage in any other social activities (including going to the chapel to practice his religion) The Paxil.... is not effective... I would like medication that will help me function normally and not have chest pains and anxiety all the time."

25. On December 13, 2017, while in segregated housing the plaintiff reported to PA Coffey, he was having severe back pain, and she prescribed Ibuprofen.

26. On December 22, 2017, the plaintiff went to sick call due to the severe back pain he was experiencing. He was seen by PA Quist. PA Quist said he was assigned answering the BP-9 that the plaintiff filed. Quist said to the Plaintiff as a remedy to the BP-9 "go to group counseling". Then he told the Plaintiff to sign the BP-9. When the Plaintiff received the BP-9, it said "informally resolved" and there was no answer from the Warden as is customary and expected. The Plaintiff was told by Counselor Patronick that he was "hit" because he signed the BP-9. Someone had written the Plaintiff's name and wrote "informally resolved". Because of this the Plaintiff had to start the Administrative remedy over again.

27. The Plaintiff since his arrest, and the stopping of his medication (Kolopin) suffered from among other things, severe chest pains. He also suffered from nightmares where he was told he screamed "Get him off me". He suffered a poor quality of life being confined to his bunk to try to lessen his suffering.

28. Since May 2017, the Plaintiff had been trying to get the Defendants, Kennedy, Patel, and Santoro to help him. The Plaintiff filed several Administrative Remedies stating his suffering. The Defendants own admissions in the Administrative Remedies state "You arrived at FMC Devens on March 31, 2017 with a mental health history significant for depression and anxiety disorder." Although recognized and admitted the Defendants did next to nothing to alleviate the Plaintiffs suffering.

29. Since March 31,2017, the Plaintiff agrees that he was seen a few times by the Defendants. However, although the Plaintiff submitted numerous cop-outs to the Defendants and stopped to personally speak to them on the walk-way, no real or substantial actions had been taken by the Defendants showing deliberate indifference to his constant suffering and acknowledged mental health issues.

30. The reply to the BP-9 dated November 12,2017 is not the typical response. The Plaintiff did not agree with Defendant Quist's suggestion to "group counseling". The Defendant did not refer the Plaintiff to Psychology to be put in a group, so he did not even follow through with his own counsel. The BP-9 is a request to the Warden. A reply to the request by the Warden is expected. When the Warden replies it gives the inmate the ability to appeal to a higher level. Defendant Quist took this away from the Plaintiff and he then had to start the Administrative Process over again, extending the time the Plaintiff suffered.

31. Although there was no reply from the Warden, the Plaintiff thought if he submitted a copy of the BOP Program Statements regarding Administrative Remedies his complaint would be addressed. In the BOP Program Statement 1330.18 it states "the coordinator should be flexible in sensitive or problematic issues, **such as medical treatment**" Regional Director Caravel rejected his appeal although the policy was stated and a copy of the wording attached to the BP-10.

32. In his appeal to the Regional Director (BP-10) the Plaintiff stated "Since October I have been having difficulty coping." He stated he spoke to Defendant Santoro telling her he had difficulty coping. He told the Regional Director that in BOP custody previously he received Kolopin for his "known mental health history". Although the Plaintiff enclosed the quote from the Program Statement, his appeal was rejected.

33. On January 2,2018 the Plaintiff filed a third BP-8 on this issue. In it he stated he had not been seen by a mental health provider since October 2017, and the medication was not helping. He continued to claim of chest pains, shortness of breath, and ongoing nightmares.

34. At that appointment the Defendant gave the Plaintiff the "HAM-A" test where the Plaintiff scored a twenty (20). The Defendant in her report said that the score of twenty (20) "showing a decrease in anxiety, suggesting the Paxil is working" Yet referring to item 17 of this Complaint, the Plaintiff scored a twenty-one (21) on this same test and the Defendant stated the Plaintiff was suffering from "moderate anxiety". The report as co-signed by Defendants Kennedy and Patel.

35. On January 18, 2018 the Plaintiff received a rejection notice on his BP-10 because there was no "wardens review and response". Completely ignoring the Program Statement enclosed.

36. The Plaintiff then filed with the Central Office BP-11, even though the Regional Director rejected his appeal. The Plaintiff again quoted the Program Statement regarding rejections of administrative remedies. The Plaintiff stated that FMC Devens staff had shown callous disregard for his suffering and have done nothing to alleviate his suffering. He again, as he has done in all his cop-outs and appeals, asked for medication to help with his suffering.

37. On January 18, 2018, the Plaintiff received a reply to his third BP-8 on the issue of his suffering. It stated he would be seen by Defendant Santoro "so treatment of his panic attack and anxiety will be addressed at that time."

38. On January 18, 2018 the Plaintiff appealed to the Warden (BP-9) the Plaintiff stated " in my bunk because going out of the cube causes me great anxiety and panic attacks." He also states his condition limits him and significantly affects his daily activity, including going to the chapel for religious services on Saturday and that he is in almost constant pain.

39. On February 12, 2018, Defendant Spaulding responded to the BP-9 filed on January 18,218. The response stated the problem was non-compliance. According to medication records for December 2017 through April 2018, the Plaintiff was compliant to the best of his ability. If note is taken on the days of no shows, they were on weekends. On weekends there is only one pill window open, so it is very crowded. The Plaintiff has difficulty being in a crowd so to go to a crowded confined area after being in a crowd at the meal, was too much for the Plaintiff to do.

40. In the Defendants reply to the Plaintiff's BP-9 dated February 12, 2018, the Defendant acknowledged the Plaintiff's "mental health history significant for depression and anxiety disorder." Again, the Defendant states "You are receiving appropriate medical care consistent with Bureau of Prisons medical standards. The Plaintiff has now been suffering almost eleven (11) months with no alleviation of symptoms.

41. On February 14, 2018, the Plaintiff filed an appeal to the Regional Director. In that appeal the Plaintiff stated that Defendant Santoro told him his compliance was over eighty percent (80%) and she said she was satisfied with that. The Plaintive stated he doesn't go to lunch due to lunch or mid-day pill line due to severe pain in his back. The Plaintiff again stated his disability affects his daily routine and requests medication to help him "function more normally".

42. After leaving pill line with on medication on the 6th the Plaintiff went to "N" building to see Defendant Patel, to ask him to change the time he receives medication. He was not there but another doctor saw the Plaintiff's distress and went to Defendant Kennedy to  get the order changed.

43. On March 14, 2018, the Plaintiff received a reply from the Regionals Office. Regional Director Carval stated "You have not voiced and complaints since your encounter on January 11, 2018. The appeal was denied. Although there is much evidence to the contrary, the Plaintiff would appeal this decision to the Central Office.

44. On March 14, 2018 the Plaintiff received a rejection from the Central Office on the BP-9 that Defendant Quist wrote "informally resolved" The rejection said "You must file a new appeal at the Institution al level" Now almost a year had passed with the plaintiff suffering mentally, and physically with severe back pain. The Plaintiff was not receiving proper care for his suffering. Central Office too, did not follow BOP policy PS 1330.18 regarding rejections for medical reasons, this delay again continued to cause the Plaintiff to suffer needlessly.

45. The Plaintiff filed an informal Administrative Remedy, and a BP-9. The Plaintiff did not receive a reply to the BP-9 requesting a job change.

46. On March 25, 2018 Plaintiff again appealed to the Central Office, stating "I have been trying to get something for my anxiety and panic attacks since my arrival a year ago." He stated that although Defendant Patronick agreed to reassign the plaintiff, Food service refused to release him. He also stated "the medication does not help at all. I need something to help with my pain and anxiety."

47. On March 29, 2018 the Plaintiff filed a BP-8 because food service refused to release him. The Plaintiff in the reply was accused of "playing games" with his medical idle. The Plaintiff had received medical idles from medical staff due to his cronic severe back pain since December 22, 2017. He had no control over the issuing of medical idles, he only requested them and they were provided by the medical staff.

48. On April 2,2018, the Plaintiff received a reply to his BP-8. It stated his job was changed from dining room (FS2) as this "reduces prolonged standing", however dining room workers walk around the dining room clearing tables for forty-five (45) minutes to an hour. Plaintiff never tried to "manipulate" staff to try to get his job as a line server back, he was trying to be released from food service.

49. In addition, the answer continued "a panic attack in your unit is of no relevance to your work assignment" Yet under Inmate Complaint, it clearly states the Plaintiff had a panic attack witnessed by staff. The writer clearly showed deliberate indifference to the Plaintiff's suffering.

50. On April 5, 2018, Plaintiff saw Dr. Murray. In his report he states "Patient has ongoing lower back pain with palpable muscle spasm in right paraspinal" He also states "*Some if his issues of pain and seeking idles see to be related to anxiety and avoiding crowds.*" He continues" I contacted M/H/PT work supervisor with restrictions and concerns and psychiatry has made arrangements with work supervisor for him to work in food service in a non-crowded area." Defendant Murray continues: "He (Plaintiff) needs to F/U with MH as he notes he is getting panic attacks as one of his causes of work issues, and notes he sought a medical idle once for this. He reports he sought a medical idle once for this. He reports not being able to go to chow at times of being able to sit in the TV room." Dr Murray issued a work restriction, but took no action regarding his panic and anxiety that he showed he was well aware of. Murray reviewed the patient's medication list including over the counter medications, according to the changed BOP orders, and they were continued. This included Ibuprofen.

51. At many BOP facilities, on the computers tru-links, Inmates have access to Inmate Request to Staff. An email is sent to the staff member of the department the Inmate wishes to contact. At FMC-Devens, that capability is not available, so there are no records of Inmates sending a request. In the Plaintiff's case, many of his requests went unanswered or were answered weeks and months later.

52. On April 19, 2018, the plaintiff sent a written note to Defendant Patel, telling him he was having trouble coping. The Plaintiff received a reply "you will be scheduled for a call out"

53. On April 9,2018 the Plaintiff wrote a sworn statement in response to the incident report. He gave it to defendant Patronick.

54. On April 24, 12018, the Plaintiff was seen by UDC (Unit Disciplinary Committee). It consisted of Defendant Partronick and Counselor Buckley. The Plaintiff was asked through the cell door if he left food service and went back to the unit. When the Plaintiff said he went to the chapel, he was again asked "Did you go back to the unit?". When the Plaintiff responded in the affirmative, the Plaintiff was found guilty of refusing to work and sanctioned to three (3) months loss of commissary and visits. The Plaintiff's protected liberty rights were violated as he never refused to work, but in fact was put in Segregated Housing when he was reporting for work.

55. On April 27, 2018, the Plaintiff appealed to Defendant Spaulding the decision of the UDC. In his appeal the Plaintiff explained that he suffered a panic attack and told Defendant Bernard about it. He stated that his disability affected his daily routine. The Plaintiff also stated from 12:30 to 1:30 he was in the chapel making an authorized bereavement call.

56. On April 27, 2018, Plaintiff met with psychology Intern Lassett. In her report she states she met with the Plaintiff after "reviewing Inmate writing, medical reports, presentence reports, psychology data, and staff interviews." She continued under Reason for Referral the Plaintiff was "referred to by correctional staff after staff found a letter in his mail regarding Plaintiff contemplating suicide."

57. In Ms. Lassett's report, in the Risk and Protective Factors, she stated: "Static risk factors were present" and increase inmate's risk for engaging in suicide related behavior, history of childhood abuse (physical or sexual), history of inpatient treatment, history of mental illness, history of self-injury or suicide attempt. Under "Dynamic" risk factors, "Uncontrolled mental health symptoms."

58. On May 5,2018, the Plaintiff wrote a three (3) page letter to Defendant Spaulding. He explained some of the issues he was dealing with and what was causing his anxiety to increase. He advised the Defendant of his back pain, and the need to go to his unit to do his CBT exercises. The Plaintiff asked for time after lunch to go to his unit to do his CBT exercises because he suffers during meal times. He stated dealing with the B/S from F/S is causing me more anxiety that I don't need, nor can I deal with. I am doing the best I can so I don't kill myself" The Defendant did not reply or assist the Plaintiff

59. On May 10th Plaintiff filed a cop-out with Defendant Kennedy. He Stated "I do not receive any medication that alleviates my condition... I have given four (4) cop-outs to Dr. Patel, but he has ignored them." The Plaintiff asked the defendant to please notify food service that he needs to return to his unit to do CBT exercises when experiencing a panic attack

60. On May 12th the plaintiff went to see the Chaplin. The Chaplin (Fargo) stated "you look frightened" The Plaintiff said he has panic attacks. The Chaplin replied, "same thing".

61. On May 11,2018 the Plaintiff met with Defendant Surowaniec regarding the decision of the UDC that the Plaintiff appealed to the warden, the incident report for refusing to work. The Plaintiff again explained about his panic attacks, and how he was suffering one that he reported to defendant Bernard. At that time, the Plaintiff did not remember the bereavement call. When he remembers, he gave Surowaniec a cop-out stating he was in the chapel 12:30 - 1:30 and gave him a copy of the telephone log.

62. On May 14th the Plaintiff saw the UDC (Defendant Patronick and Counselor Buckley) regarding the second incident report. The Plaintiff admitted he was in his bunk doing his CBT exercises from 12:30 to 1:30. The UDC committee stated "the committee didn't refer the incident to the DHO (Disciplinary Hearing Officer) due to having available sanctions. The Plaintiff was found guilty and sanctioned to loss of email for two (2) months, and loss of commissary for another two (2) months, to end September 25, 2018, and a loss of visits for two (2) months.

63. The Plaintiff was visibly upset and said taking his email away is the only means of communication he had with his wife as he had no money to call her, and his wife never writes him regular mail. He stated "you may as well slit my throat." Again, the Plaintiff was sanctioned for a known and acknowledged disability.

64. On May 14th the Plaintiff met with Psychology Intern Lassett. The Plaintiff told her how he was struggling. She gave the Plaintiff some suggestions to assist him.

65. On May 15th the Plaintiff filed a BP-9 appealing the decision of the UDC on the incident report above. In his appeal the Plaintiff states he had filed administrative remedies and numerous cop-outs regarding his deteriorating mental health. He stated "I may be guilty of going to work late, to KEEP ALIVE, but is not staff who have been made aware of his disability and have ignored repeated requests for help culpable in some way?" He continued "Don't they have a duty of care for a disability they recognize I have?" The Plaintiff stated "I do not refuse to work. I only ask for the time to come out of my panic attack. It is unfair to be punished for an acknowledged disability."

66. On May 21st, Plaintiff saw Defendant Patel. Patel stated he received a phone call from Plaintiffs unit counselor advising him the Plaintiff made a statement to a volunteer (religious) about committing suicide. Again, the defendant claims "he was sitting without shakes while waiting for call-out." The Plaintiff saw the Defendant coming toward him talking to his previous patient. The Plaintiff was sitting on a bench no in line of sight from where the Defendant was coming from.

67. On May 21st Plaintiff met with Psychology Intern Lassett, as the Plaintiff told the religious volunteer he was planning to commit suicide. She concluded the "Overall Acute Suicide Risk" was low, and the "Overall Chronic Suicide Risk" was present.

68. On May 23rd Defendant Spaulding denied his request for Administrative Remedy on the Incident Report of April 18th. He stated "Records indicate your work supervisors are aware of your history of anxiety and panic attacks." "At the time of this incident, the dining room was not crowded and you were not given permission to leave work."

69. The Incident Report, 3113933, under time staff became aware of the incident it says 12:00. This was during the serving of lunch so the dining hall was full of inmates. It was at 12:00 that the Plaintiff told the Defendant (Bernard) he was having a panic attack. The time the Plaintiff was put in Segregated Housing was 2:00.

70. The reply to Administrative Remedy 939394-F1 also stated "There is no evidence to indicate you were unable to appreciate the nature and quality, or wrongness of the act at the time of the incident." There was no acknowledgement that the Plaintiff was in the chapel making a bereavement call as the reason he went to work at 1:30 instead of 12:30.

71. The response also stated "Pursuant to Program Statement 5270.09 Inmate Discipline Program, chapter 4 section (e), "You are entitled to make a statement and present documentary evidence to the UDC on your own behalf." The Plaintiff a sworn statement, and a copy of the telephone log from the chapel, showing the time the plaintiff was making his approved bereavement call.

72. When the Plaintiff has a panic attack, he is not able to think rationally, but is in a "Fight or Flight" mode, he feels the need to get out of the area and go to a safe place. The Defendant stated the Plaintiff's problem was a behavioral problem, not a mental health issue. The Plaintiff was punished for his mental disability.

73. On May 30th the Plaintiff met with Defendant Surowaniec about the BP-9 he was answering on behalf of the warden. The Defendant stated" Would you like me to spend my time working on this, or work on your file for going to the half-way house?" The Plaintiff felt this was a threat of retaliation for fining this administrative remedy as guaranteed by the 1st Amendment. The Plaintiff withdrew his Administrative Remedy.

74. On June 2nd the Plaintiff appealed the finding of guilt in the April 18th Incident Report to the Regional Director. He stated he was in the chapel on an authorized bereavement call, and should not have been found guilty. He requested the Incident Report be dismissed and the sanctions lifted.

75. On June 19th Plaintiff saw Defendant Patel. The Defendant was notifying the Plaintiff that the thirty-day (30) prescription to kolopin may be stopping because the BOP had not approved it at that time. All "non-formulary" prescriptions need to be approved by the BOP. The Defendant extended the prescription for seven (7) days, and would send the request again. In that time apparently, the request was approved and the Plaintiff continued receiving the kolopin.

76. On June 22nd the BOP approved the kolopin.

77. On July 11th the Plaintiff spoke with Defendant Yeh about his severe back pain. The Plaintiff asked for a double mattress but was told "we do not give out double mattresses, pillows, or blankets, unless medically required. They are not given out for issues of comfort."

78. On July 2th the Plaintiff saw Defendant Santoro. She administered the oral tests again. The Plaintiff said he was doing better, but still suffered from anxiety. The Plaintiff asked for an increase in the dosage of his medications, but was told it would make him "too sleepy" The Plaintiff was given the oral tests again. He scored 15 on the HAM-A test indicating mild, moderate anxiety, and 13 on the PHQ-9 for depression.

79. On July 28th the plaintiff sent a cop-out to Defendant Quist stating he was still suffering from severe back pain, and asked for an appointment to be seen. There was no reply to the cop-out.

80. On July 28th the Plaintiff sent a cop-out to Defendant Patel with a copy to Defendant Kennedy stating that he was still suffering from severe anxiety and would like to see him for an increase in his dosage. There was no reply to the cop-outs.

81. On July 31st the Plaintiff sent a cop-out to Defendant Murray telling him he had continued severe back pain and asked to be seen. In his report of April 5th, Defendant Murray stated there was to be a follow-up in two months to see if an MRI was needed. At the time of the release of the Plaintiff no follow-up was made.

82. On August 10th the Plaintiff received a reply from the regional director regarding the appeal of the Incident Report of April 18th. The Director remanded the Incident Report back to the UDC for further review. The sanctions were not lifted, nor the Incident Report dismissed.

83. On August 11th the Plaintiff saw Defendant Quist on the walkway. The Plaintiff told the Defendant he was still in severe pain all the time. The Plaintiff also told the Defendant the Ibuprofen was not being filled although he had a valid prescription. Defendant Quist told the Plaintiff he had to purchase it on the commissary. The Plaintiff said he receives minimal funds from work, under twenty-two dollars ($22.00) in a four-month period. The Defendant told the Plaintiff to apply for indigent status.

84. On August 10th the Plaintiff saw Defendant Murray on the walkway. The Plaintiff told him he was still in severe back pain all the time. The Plaintiff said he sent him a cop-out. Defendant Murray said all his cop-outs go to Defendant Quist. The Defendant said go to sick call. The Plaintiff said he couldn't afford the two dollars ($2.00) co-pay. Then the Defendant said to put in a cop-out.

85. On August 12th the Plaintiff sent a second request to be seen by Defendant Murray for his severe back pain. There was no reply to the cop-out.

86. On August 13th the Plaintiff saw Defendant Garny on the walk way. The Plaintiff said he was in

severe pain in his back. He told Garny he went to sick call on July 3rd and was told that sick call

was not for chronic issues. Garny said "I told you that." The Plaintiff said his ibuprofen was not

being refilled and Defendant Quist told him to buy it on commissary. To be indigent one must

make less than six dollars ($6.00) a month. The Plaintiff made six dollars and forty-eight cents

($6.48) in May and Five dollars and forty cents in June ($5.40) So he did not qualify as indigent.

The Plaintiff asked the Defendant, so that means I have to decide wither to be in pain, or be in

contact with my family? He stated there was nothing he could do. The Plaintiff asked if this as

BOP policy or in the Institutional Supplement. He stated it was BOP policy. Garny stated other

facilities "aren't as strict on the policy" as those facilities don't have as many people on

ibuprofen. But because FMC Devens has a lot of people on ibuprofen, they have to enforce BOP

policy. Then the defendant stated the Plaintiff should transfer to another facility. Then he told

the Plaintiff to get a job. The Plaintiff replied he works at CCS PM. Garny stated "CCS is for

people who don't want to work." The Plaintiff replied he made one dollar and twenty-six cents

($1.26) in April, a little over six dollars ($6.00) in May, and five dollars ($5.00) in June working in

food service. (Plaintiff worked five hours a day for five days a week in May and June) the Plaintiff

said he made eight dollars ($8.00) working in CCS. The Plaintiff told the defendant he works in

CCS due to his panic and anxiety disorder. The Plaintiff said to the Defendant "this seems like

deliberate indifference to me." The Defendant said "take it however you want." The Plaintiff

asked "Don't you have a duty of care?" Garny replied "we have to go by BOP policy."

87. On August 13th the Plaintiff sent a cop-out to Defendant Gurny. The Plaintiff advised the Defendant he was in severe pain in his back. He also told the Defendant that his refills had expired and that he could not afford to purchase them on commissary. The Plaintiff stated that he had to choose to either be in pain or be in communication with his family. The Plaintiff asked that the prescription be refilled. There was no reply to the cop-out.

88. On August 13th the Plaintiff sent a cop-out to Defendant Quist. The Plaintiff stated he was in severe pain in his back and his ibuprofen refills had expired. He asked for it to be renewed as he makes minimal money. There was no reply to the cop-out.

89. On August 13th the Plaintiff sent a cop-out to Defendant Spaulding. The Plaintiff said he could be receiving Ibuprofen if he was indigent. But he made a little more that the amount required to be indigent. The Plaintiff stated he was in severe pain, and was being forced to choose between pain and communication with his family. He asked for his ibuprofen to be renewed. He received no reply to the cop-out.

90. On August 13th the Plaintiff sent a cop-out to Defendant Murray. He said he was in severe pain and asked that his ibuprofen be refilled. There was no reply to the cop-out.

91. On August 24th the Plaintiff sent a cop-out to Defendant Yeh. The Plaintiff stated he had severe

    back pain since December 2017. He stated Dr. Murray said in his April 5th report about having an

    MRI. The Plaintiff told the Defendant he has not had any treatment since his physical therapy.

    Then the Plaintiff told the defendant about his ibuprofen expiring. He told the Defendant that

    he was told to buy it on commissary. He said that if he buys the ibuprofen on commissary, he

    would not be able to be in communication with his family.


92. On August 13th the Plaintiff saw Defendant Patel. He told the Defendant he still suffered from

    anxiety. The Plaintiff asked the kolopin be increased. The Defendant replied he did not want to

    go back to ask for an increase in a non-formulary medication. He said the first time they took a

    long time to answer.


93. On August 22nd the Plaintiff's Tort Claim for his personal injury (back pain for not receiving

    medication) was received by Northeast Regional office.

94. On August 27th the Plaintiff approached Defendant Spaulding at mainline. The Plaintiff asked him if he received his cop-out. The Plaintiff stated he was in pain all the time and his ibuprofen expired. The Plaintiff said "Why are you sending those cop-outs to me?" The Plaintiff replied "I already had sent them to everyone else and he was the top of the ladder." The Defendant told the Plaintiff to talk to the medical staff in the other dining area. The Plaintiff replied "I already spoke to all of them." The Defendant said "buy it on commissary." The plaintiff said "I can't afford it." He said "if you are indigent you can get a seven (7) day supply." The Plaintiff said he made eight dollars ($8.00) last month. The Defendant then said "You are not indigent and have to buy it on commissary." The Plaintiff stated if he buys it on commissary, he couldn't be in communication with his family. The Defendant replied "I don't make policy, I only enforce it."

95. On August 29th the Plaintiff received a reply to his cop-out to Defendant Yeh. It was answered by Defendant Murray. The reply was the Plaintiff did "not qualify for indigent status so would need to purchase this via commissary. Sorry."

96. On September 5th the Plaintiff spoke with Defendant Yeh. The Plaintiff stated he had a
    prescription to ibuprofen that expires October 30, 2018, yet it was not being refilled. The
    Plaintiff was told that if it was not for "medical reasons" he must buy it on commissary. The
    Plaintiff told Yeh that he had been told by PT Anderson the pain was caused by stress and
    anxiety. The Plaintiff also said the last exam by PA Coffey said he had a muscle spasm on the
    right side. The Defendant replied "so does half of Americans." The Plaintiff said the prescription
    was stopped without any exam. The Plaintiff was told again to buy it on commissary. Yeh
    continued and said if the Plaintiff was indigent, he would receive it, otherwise he must buy it on
    commissary. The Plaintiff said, "so you are telling me that I must decide if I want to suffer in
    pain, or communicate with my family." He replied "yes". The Plaintiff said "I just want to get this
    clear, I have to decide whether to be in pain or communicate with my family. He stated again
    "yes."

97. On September 6th the Plaintiff received a reply to his cop-out to Defendant Patel dated April 8,
    2017 (should be 2018) He said he was scheduled to be seen September 10th. The reply was
    dated August 31, 2018.

98. On September 11th Plaintiff was seen by Defendant Patel. Defendant asked Plaintiff how he was
    feeling, and Plaintiff replied "shitty". The Plaintiff described his situation, no money no clothes,
    no family, no friends, no home, stated he suffered from severe anxiety as his release date was
    only sixteen (16) days away. Defendant asked if the Plaintiff was receiving any half-way house
    time, Plaintiff said he was being dropped off at a men's shelter. Plaintiff asked for an increase in
    dosage of his medications, but was denied.

99. The Plaintiff was told several times "you are receiving and will continue to receive appropriate medical care consistent with Bureau of Prisons medical standards. "The Defendants are under the need for "affirmative actions" to treat "individual inmates" not to mechanically follow a policy or regulation that causes inmates needless suffering.

100.     On March 18,2019, Plaintiff received a denial of his tort claim TRT-NER-2018-07138.

## RELIEF SOUGHT

The following is a list of monetary damages the Plaintiff seeks from the Defendants. The Plaintiff claims

the defendant actions so egregious that Punitive damages should be awarded.

| Defendant | Compensatory Damages | Punitive Damages |
|---|---|---|
| Federal Bureau of Prisons | $100,000 | $250,000 |
| Public Health Services | $ 50,000 | $100,000 |

**Affidavit in support of complaint:**

I swear or affirm under penalty of perjury under United States laws that the allegations made in
this complaint are true and correct (Title 28 USC subsection 1746)

April 29, 2019
_____
Date

_____
Date

_____
Robert J. Pedreira Sr.

_____
Notary

JONATHAN S. TOWSLEE
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
October 23, 2020